﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190522-9054
DATE: July 30, 2019

ORDER

Compensation under 38 U.S.C. § 1151 for “brain fog” due to VA prescribed medication is denied.

FINDING OF FACT

The preponderance of the competent evidence of record supports a finding that the VA prescribed Gabapentin for the Veteran’s neuropathy did not cause additional disability.

CONCLUSION OF LAW

The criteria to establish compensation under 38 U.S.C. § 1151 for “brain fog” have not been met. 38 U.S.C. §§ 1131, 1151, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.361 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from July 1958 to May 1962.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an April 2019 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO).

In his May 2019 Decision Review Request to the Board, the Veteran requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). In a May 2019 letter, he stated that he had submitted everything related to his claim but that he would “appreciate talking to a Judge face to face not on the television.” Because, however, the Veteran requested the direct review lane for his appeal, he is not eligible for a hearing. 

1. Compensation under 38 U.S.C. 1151 for “brain fog” due to prescribed medication is denied.

Service connection will be granted if the evidence demonstrates that current disability resulted from an injury suffered or disease contracted in active military, naval, or air service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things—(1) current disability; (2) in-service injury or disease; and (3) a relationship between the two. Saunders v. Wilkie, 886 F.3d 1356, 1361 (Fed. Cir. 2018). Consistent with this framework, service connection is warranted for a disease first diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

A veteran who suffers disability resulting from hospital care or medical or surgical treatment provided by a VA employee or in a VA facility is entitled to compensation for the additional disability “in the same manner as if such additional disability . . . were service-connected” if the additional disability was not the result of willful misconduct and was proximately caused by “carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of [VA] in furnishing” that treatment or “an event not reasonably foreseeable.” 38 U.S.C. § 1151(a)(1)(A), (B); 38 C.F.R. § 3.361(a)-(d); Viegas v. Shinseki, 705 F.3d 1374, 1377-78 (Fed. Cir. 2013). The purpose of the statute is to award benefits to those Veterans who were disabled as a result of VA treatment or vocational rehabilitation. 38 U.S.C. § 1151(a).

First, there must be evidence of additional disability, as shown by comparing the veteran’s condition before and after the VA medical care in question. 38 C.F.R. § 3.361(b). To determine whether a veteran has an additional disability, VA compares the veteran’s condition immediately before the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy (CWT) program upon which the claim is based to the veteran’s condition after such care, treatment, examination, services, or program has stopped. VA considers each body part or system separately. Id. 

Second, the additional disability must be caused by hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program furnished the veteran by VA. 38 C.F.R. § 3.361(c). Merely showing that a Veteran received care, treatment, or examination and that the Veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1). In order for additional disability to be compensable under 38 U.S.C. § 1151, the additional disability must have been actually caused by, and not merely coincidental to, hospital care, medical or surgical treatment, or medical examination furnished by a VA employee or in a VA facility. 38 C.F.R. § 3.361(c)(1); Loving v. Nicholson, 19 Vet. App. 96, 99-100 (2005); Sweitzer v. Brown, 5 Vet. App. 503, 505 (1993). That is, the additional disability must have been the result of injury that was part of the natural sequence of cause and effect flowing directly from the actual provision of “hospital care, medical or surgical treatment, or examination” furnished by VA and such additional disability must be directly caused by that VA activity. Loving, 19 Vet. App. at 101.

Third, the proximate cause of the disability, as opposed to a remote contributing cause, must be (1) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or (2) an event that was not reasonably foreseeable. 38 U.S.C. §1151(a)(1); 38 C.F.R. § 3.361(d).

Thus, section 1151 contains two causation elements—an additional disability must not only be “caused by” the hospital care or medical treatment received from VA, but also must be “proximate[ly] cause[d]” by the VA’s “fault” or an unforeseen “event.” 38 U.S.C. § 1151(a)(1).

Here, the Veteran contends that VA prescribed Gabapentin to treat his neuropathy and that the medication caused “brain fog.”

VA treatment records reflect that the Veteran started taking Gabapentin in the fall of 2015. In February 2017, he complained that he felt “mentally foggy” over the previous several months. His wife reported that he had always been forgetful but that his memory appeared to be worsening. He also complained of dental problems and believed both issues were due to the medication. Later that month, he reported that he stopped taking the medication and was feeling somewhat better. 

VA treatment records in March 2017 reflect that the Veteran complained of problems with forgetfulness and excessive daytime somnolence. Dr. J.L., a VA neurologist, opined that this might be related to the antidepressants that he was taking (trazodone, venlafaxine, and also lamotrigine). In April 2017, the Veteran continued to express concerns regarding side-effects he experienced with Gabapentin, such as loss of teeth and mental fogginess. The examiner noted that he had had several tests, including a brain MRI, Carotid Doppler, and EEG, which were unremarkable. In August 2017, the Veteran stated that he began taking Gabapentin in the fall of 2015 and in the first four to six months he began to forget things and his teeth broke off. He reported that he was bipolar but had had good control of his condition for several years, but that the Gabapentin “drove [him] down into depression.”

In December 2017, the Veteran attended a neuropsychology consultation with Dr. L.L., who was board certified in clinical neuropsychology. Dr. L.L. noted that the Veteran’s primary physician was concerned regarding the Veteran’s cognitive impairment, and that pseudodementia had been previously diagnosed. He noted the Veteran had been prescribed Gabapentin for his peripheral neuropathy, and that he denied any side-effects and his B12 values were normal in February 2016, and his neurologist raised his Gabapentin dose. In February 2017, the Veteran stopped by to see his prescribing neurologist and complained of dental issues and “fogginess” in his head, which he attributed to chronic Gabapentin therapy. In May 2017, Dr. J.L. noted that the Veteran had pseudodementia that was “related to his depression.” Dr. L.L. noted that the Veteran had had an MRI of the brain, which was normal; a PET scan of the brain, which was normal; a carotid duplex, which was normal; an EEG, which was normal; and a CT scan of the head, dated back to 2015, which was normal. Dr. L.L. also noted that the Veteran had been under VA psychiatric care since November 2006 and was diagnosed with bipolar I disorder, currently euthymic. Further, Dr. L.L. noted that a few months ago, the Veteran presented to another VAMC to be tested for early onset dementia. Reportedly, imaging revealed he had suffered four mini strokes four to six months earlier. Regarding his “early dementia,” the Veteran reported that he was told it could be treated. In addition, he reported that he saw Dr. D., a neurologist, who reviewed his imaging and told him that his condition could not be attributed to Gabapentin. The Veteran stated that he was unhappy with this statement as he felt it was simply her opinion and was not warranted. 

In July 2018, the Veteran had a neurology consultation with Dr. B.F., during which he complained of brain fog and teeth problems due to Gabapentin. Dr. B.F. noted that the Veteran had seen two other neurologists and a neuropsychologist at this VAMC and had a neuropsychologist evaluation and saw neurologists at another VAMC. The Veteran reported that all the results showed pseudodementia related to depression and somatization. Dr. B.F. found that the Veteran had underlying psychopathology and mental illness without indication of a dementing process, either amnestic or FTD. 

A February 2019 VA examination report from a licensed clinical psychologist reflects that she was not qualified to provide a medical opinion concerning the effects of a medication such as a neuroleptic. She explained that this question should be addressed to a medical provider such as a psychiatrist (as they were board certified in psychiatry and neurology) or a neurologist.

In April 2019, the RO obtained an addendum opinion from Dr. B.F., the VA neurologist who examined the Veteran in July 2018. Dr. B.F. noted that the Veteran was mentally ill and had no lasting side effects from the Gabapentin. The Veteran described his condition as “dievauzidas,” which the examiner noted was not an English word, but, after an internet search appeared to be Lithuanian, meaning “word of g-d.” The examiner stated that the Veteran had a severe psychopathology, which should be addressed, and had “absolutely no problem from Gabapentin,” which should have been clear based on the examiner’s evaluation of the Veteran in July 2018. 

Based on the evidence of record, the Board finds that compensation under 38 U.S.C. § 1151 for “brain fog” due to VA prescribed Gabapentin is not warranted.

The record reflects that the Veteran does not have an additional disability caused by the Gabapentin VA prescribed from the fall of 2015 to February 2017. The Veteran had several consultations with VA neurologists and neuropsychologists, and all test results were normal. In addition, the Veteran reported that Dr. D., a neurologist who reviewed the Veteran’s test results, told him that his condition could not be attributed to Gabapentin. Further, the April 2019 examiner referred to his prior in-person examination of the Veteran in July 2018, and specifically stated that the Veteran did not have any lasting side-effects from the Gabapentin, and instead had a severe psychopathology. As the April 2019 VA neurologist explained the reasons for his conclusions based on an accurate characterization of the evidence of record, his opinion is entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303 (2008). Moreover, there is no contrary medical opinion in the evidence of record. Therefore, the Veteran does not have and additional disability “caused by” medical treatment received from VA and compensation under the provisions of 38 U.S.C. § 1151 is not warranted.

(Continued on the next page)

 

The Board has also considered the lay statements of the Veteran indicating all of the medical problems that occurred after he started taking Gabapentin. Lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran’s particular disability is the type of disability for which lay evidence is competent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In this case, the lay testimony as to the occurrence of multiple symptoms following his prescription of Gabapentin is competent and relevant; however, as to whether these additional symptoms were caused by Gabapentin, this is testimony as to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Compare Jandreau, 492 F.3d at 1376 (lay witness capable of diagnosing dislocated shoulder); Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (lay person competent to testify to pain and visible flatness of his feet); with Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) (“It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant”); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n.4 (“sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer”). The lay testimony is therefore not competent on this question. 

The Board is sympathetic to the contentions of the Veteran; however, the Board is bound by VA’s laws and regulations, and those laws and regulations require specific elements of causation to satisfy a claim under 38 U.S.C. § 1151 and that the evidence be at least evenly balanced on the dispositive issues in order to award benefits. 38 U.S.C. § 7104(c); 38 C.F.R. §§ 19.5, 20.101(a). For the above reasons, the weight of the evidence is against the claims for the compensation under 38 U.S.C. § 1151 for qualifying additional disability.

 

James L. March

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD L. Leifert, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.